# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1369 | **DATE** | 7/17/2003 |
| **CASE TITLE** | Cello L. Pettiford vs. City of Chicago, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Defendants' motion to dismiss (29-1) is granted in part and denied in part.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUL 18 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | AM | 33 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 7/17/2003 | |
| | | | date mailed notice | |
| GL | courtroom deputy's initials | | GL | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

Minute Order Form (06/97)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CELLO L. PETTIFORD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 02 C 1369 ) |
| CITY OF CHICAGO, a Municipal Corporation, SUPERINTENDENT TERRY HILLARD, OFFICERS L. PORTER, HARO, SULLIVAN, and YAZGUERRE, in their individual and official capacities, | ) ) ) ) ) ) |
| Defendants. | ) ) ) |

DOCKETED
JUL 1 8 2003

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff Cello L. Pettiford has brought a *pro se* complaint against Defendants City of Chicago (the "City"), Superintendent Terry Hillard ("Superintendent Hillard"), and Chicago Police Department ("CPD") Officers L. Porter, Haro, Sullivan, and Yzaguerre (the "Officers"), in their individual and official capacities, pursuant to 42 U.S.C. §1983. Pettiford's complaint alleges violations of his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights, as well as various state law torts. Presently before us is Defendants' motion to dismiss the claims against Superintendent Hillard and the Officers in their official capacities as well as the claims against Superintendent Hillard in his individual capacity. Also before us is Defendants' motion to dismiss Plaintiff's false arrest, First, Fifth, and Eighth, Due Process and Equal Protection claims. For the reasons set forth below, we grant Defendants' motion to dismiss the claims against Superintendent Hillard and the Officers in their official capacities, but deny their motion to dismiss the claims against Superintendent Hillard in his individual capacity. We deny

33

Defendants' motion to dismiss Plaintiff's false arrest and Due Process claims. We grant Defendants' motion to dismiss Plaintiff's First, Fifth, Eighth, and Equal Protection claims.

I. BACKGROUND

The following facts are taken from Plaintiff's complaint and are deemed true for the purposes of this motion. *See MCM Partners, Inc. v. Andrews-Bartlett & Assoc., Inc.*, 62 F.3d 967, 972 (7th Cir. 1995). Between June 2000 and February 2001, Plaintiff frequented the Uptown neighborhood where friends and family members resided. He also frequented Truman College, where he had friends among the student body and faculty members. Located across the street of Truman College was the Nickel, a pub which Plaintiff occasionally frequented after class and work. During the aforementioned period of time, Plaintiff was subject to four or more searches by the CPD. On two occasions, Plaintiff was arrested and charged with misdemeanor offenses, which were later dismissed. Plaintiff was and continues to be active in various organizations in the community, including Campaign to End the Death Penalty, which often puts him in close proximity to the CPD.

Around February 2001, friends of Plaintiff told him that members of the 23rd Police District Tactical Squad had entered their apartments without a warrant and ransacked their belongings. Consequently, Plaintiff attended a local "C.A.P.S." meeting on or about February 5, 2001 at Truman College at which he spoke about the issue of discriminate and illegal searches being conducted by tactical and other plain clothes officers in the area. Members of the CPD for the 23rd District who were present at the meeting said that an inquiry would be conducted into Plaintiff's concerns and that the matter would be readdressed at the March 2001 "C.A.P.S." meeting.

On or about February 14, 2001, Plaintiff was at the Nickel. Officers Porter, Haro, and at least three other plain clothes officers entered the pub and began searching some of the patrons. Plaintiff had seen Officer Porter on patrol in the Uptown neighborhood on numerous occasions. Officer Porter

2

walked past the Plaintiff and made a comment to a female friend of Plaintiff, Maria Cruz. Although Plaintiff did not hear that statement, Cruz told him that Officer Porter had made a pass at her. Plaintiff laughed in disgust and watched the officers while they searched and harassed some of the minority patrons of the pub. Officer Porter noticed the Plaintiff laughing and asked him what he thought was so funny. Officer Porter asked Plaintiff to produce an identification card, which he did. Officer Porter examined and then returned the card. He and the other officers left the pub shortly thereafter.

On the evening of February 22, 2001, Plaintiff walked to the apartment of Cruz, located at 4707 N. Malden, Chicago, Illinois, to meet Cruz and her sister for a night out. As he was walking to Cruz's apartment, Plaintiff noticed that unmarked police cars seemed to be monitoring his movements. Plaintiff arrived at Cruz's residence at approximately 9:30 p.m. He left shortly thereafter to purchase beverages at a local store and then returned to Cruz' apartment. Plaintiff and the Cruz sisters then left Cruz's apartment to walk to the residence of a friend, Kenny Robertson, located at 1207 W. Leland, Apartment 537. While walking to Robertson's residence Plaintiff noticed that a car was moving slowly towards them from behind, so Plaintiff quickened his pace until he reached his destination. Plaintiff arrived at Roberston's apartment at approximately 9:55 p.m. Plaintiff, Robertson, and the Cruz sisters remained in the apartment socializing. Around 10:40 p.m., Robertson answered a knock on the apartment door without first checking the peephole. When Robertson opened the door, Defendant Officer Porter was standing in the outside hallway with his weapon drawn. Officers Porter, Haro, Sullivan, and Yzaguerre forced their way into the apartment without a warrant and yelling obscenities. The actions of the Officers put Plaintiff in fear of his life.

Once inside the apartment, Officer Porter approached Plaintiff, picked him up by the collar of his shirt, and began searching him, removing his wallet. Officer Porter remarked that "this is the smart ass motherfucker who laughed at me the other day at the Nickel." After thoroughly searching plaintiff

without a warrant or probable cause, Officer Porter pushed Plaintiff over to one of the officers, directing him to search the Plaintiff again. As the other officer completed the second search of Plaintiff, that officer went into one of the Plaintiff's pant pockets, and said "here it is" while holding up a round, plastic bag smaller than the size of a marble, containing a controlled substance, which the officer had supposedly confiscated from Plaintiff's pocket. Officer Porter reacted by saying "laugh now motherfucker." He then took Plaintiff outside of Robertson's apartment to the hallway where he threw Plaintiff into a wall, injuring his left hand, slapped and hit Plaintiff, and bashed his head against the wall. While doing so, Officer Porter asked Plaintiff "it's funny now, isn't it?" Officers Haro, Sullivan, and Yzaguerre exited the apartment and joined Porter in escorting the Plaintiff to the elevator while telling Plaintiff "if you give us something, we'll let you go." Plaintiff said nothing. The Officers responded to Plaintiff's silence by saying "this motherfucker isn't going to cooperate, let's lock him up. Or should we kick his ass?"

The Officers took Plaintiff outside of Robertson's apartment building into an alley where one of their unmarked police cars was parked. Plaintiff was in fear for his life as the Officers stood him up against the exterior of the car and continuously pulled up on his handcuffs, causing extreme pain in Plaintiff's right shoulder. After a few minutes of threatening and mocking Plaintiff, the Officers agreed to take Plaintiff to the 23rd District Station of the CPD for questioning. After arriving at the station, Plaintiff's name was run through the CPD computer, which revealed that he was on mandatory supervised release. Officer Porter then formally arrested Plaintiff and said "write him up for a delivery." On February 22 and 23, 2001, the Officers charged Plaintiff with one count of possession of a controlled substance and one count of a possession with the intent to deliver a controlled substance.

After Plaintiff was placed in lock-up at the 23rd District Station, he informed the jail officer that he had been battered, was in pain, and was in need of medical attention. Shortly thereafter, Plaintiff was

taken to Torek Hospital where a doctor diagnosed him with a contusion to the head and gave Plaintiff a pain reliever. Plaintiff returned to the 23rd District Station and was then transferred to Cook County Jail. Upon arrival at the Cook County Jail, Plaintiff was given his wallet and other items Officer Porter had confiscated. Plaintiff was missing $270.00. Plaintiff's hand was also x-rayed. The x-ray revealed a fracture in Plaintiff's fourth left metacarpal.

A grand jury indicted Plaintiff on March 19, 2001 based on Officer Porter's testimony. On March 23, 2001, Plaintiff received a copy of the arrest report. The report stated that Plaintiff was the individual who answered the door at Robertson's residence on the evening of February 22, 2001. According to the report, Plaintiff attempted to deliver a package of a controlled substance to Officer Porter, at which time Officer Porter and three other officers made a "full entry" into the apartment. The Plaintiff was taken into custody after a search of his person revealed another package of a controlled substance. On October 22, 2002, Plaintiff was convicted of the charges brought against him.[1]

Plaintiff explains that from the time of Plaintiff's arrest up to April 8, 2003, when Plaintiff filed his complaint, the City, through its officials and Superintendent Hillard, has engaged in a campaign to discriminately harass, batter, falsely arrest and imprison minorities and individuals on parole or mandatory release in an effort to reduce crime. Overzealous CPD officers have carried out this campaign at times fabricating evidence with impunity and without regard for constitutional restraints. The abuse to which Plaintiff was subjected was consistent with an institutional practice or custom of the CPD. Although Superintendent Hillard and the City knew of and ratified, or should have known of the practice or custom, they failed to properly train and supervise CPD officers, in particular Officers Porter,

---

[1] Defendants provide a Certified Statement of Conviction/Disposition from the Clerk of the Circuit Court of Cook County, Illinois that documents Plaintiff's conviction on the two counts brought against him. We take judicial notice of this public record without converting Defendants' motion to dismiss into a motion for summary judgment. *See Menominee Indian Tribe of Wisconsin v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998).

Haro, Sullivan, and Yzaguerre. Instead, they authorized and tolerated, as an institutional practice or custom, and ratified the Officers' systematic pattern of harassment, threats, coercion, fabrication of evidence, and excessive use of physical force.

## II. ANALYSIS

### A. Standard of Review

The purpose of a motion to dismiss under Rule 12(b)(6) is to decide the adequacy of the complaint, not the merits of the case. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a motion to dismiss, we must accept all well-pled allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See MCM Partners, Inc. v. Andrews-Bartlett & Assoc., Inc.*, 62 F.3d 967, 972 (7th Cir. 1995), *aff'd* 161 F.3d 443 (7th Cir. 1998), *cert. denied* 528 U.S. 810, 120 S.Ct. 43, 145 L.Ed.2d 38 (1999). Therefore, a complaint should not be dismissed "unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Finally, where, as here, a plaintiff is proceeding *pro se*, we have a special responsibility to construe her complaint liberally. *See Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996). Indeed, it is the "well-established duty of the trial court to ensure that the claims of a *pro se* litigant are given a fair and meaningful consideration." *Palmer v. City of Decatur*, 814 F.2d 426, 428-29 (7th Cir. 1987) (citations omitted). However, "[t]his does not mean that we will fill in all the blanks in a *pro se* complaint." *Hamlin v. Vaudenberg*, 95 F.3d 580, 583 (7th Cir. 1996).

### B. Claims Against Superintendent Hillard & the Officers

Superintendent Hillard and the Officers argue that they should be dismissed from the claims brought against them in their official capacities because Plaintiff also named the City as a Defendant. We agree. Generally, official capacity suits "represent only another way of pleading an action against

an entity of which an officer is an agent." *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 691 n.55, 98 S.Ct. 2018, 2036 n.55, 56 L.Ed.2d 611 (1978). "As long as the government entity receives notice and an opportunity to respond," a suit against an official in his official capacity should be treated as a suit against the government entity itself. *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). Because the City is a named Defendant and has responded to Plaintiff's suit, we dismiss the official capacity claims against Superintendent Hillard and the Officers.

Superintendent Hillard further argues that he should be dismissed from the complaint entirely because Plaintiff's claims against him are in his official capacity only. We disagree. To sue an official in his individual capacity, a plaintiff must allege that the official was personally involved in the violation of his constitutional rights. *See Whitford v. Boglino*, 63 F.3d 527, 530-31 (7th Cir. 1995). To have been personally involved, the official must have acted or failed to act "with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge or consent." *Black v. Lane*, 22 F.3d 1395, 1401 (7th Cir. 1994) (citation omitted). Plaintiff states that he is suing Hillard "in both his individual and official capacities." Pl. Compl. at ¶6. Plaintiff alleges in part that Superintendent Hillard knew about and ratified the Officers' systematic pattern of harassment, threats, coercion, fabricating of evidence and excessive use of physical force with the intent and having the effect of depriving Plaintiff of the rights and privileges afforded to him by the United States Constitution. *See* Pl. Compl. at ¶58. Construing Plaintiff's complaint liberally, as we must, we find that he sufficiently alleges Superintendent Hillard's personal involvement in the Officers' actions in this case. We therefore deny Hillard's motion to dismiss the claims against him in his individual capacity.

### C. Section 1983 Claims

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any state . . . subjects, or causes to be subjected any citizen . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. §1983. To state a claim under Section 1983, a plaintiff must show that: (1) "the conduct complained of was committed by a person acting under color of state law"; and (2) that "this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Townsend v. Vallas*, 256 F.3d 661, 669 (7th Cir. 2001) (citations omitted).

#### 1. *False Arrest*

Defendants argue that Plaintiff is barred from bringing a false arrest claim under the Fourth Amendment pursuant to the Supreme Court's ruling in *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). We disagree. In *Heck*, the Supreme court held that a Section 1983 damages claim that necessarily implies the invalidity of a plaintiff's conviction may not be brought while his conviction stands. *See id.* 512 U.S. at 486-87, 114 S.Ct. at 2372. Plaintiff's conviction has not been overturned. Defendants contend that Plaintiff's false arrest claim necessarily implies the invalidity of that conviction. To the contrary, the *Heck* Court stated that a plaintiff's false arrest claim under Section 1983 does not challenge the soundness of his conviction. *See id.* 512 U.S. at 484, 114 S.Ct. at 2371. An example of a claim that would necessarily imply the invalidity of a plaintiff's conviction is a cause of action for malicious prosecution. The Supreme Court explained the difference between the two actions by noting that "unlike the related cause of action for false arrest or imprisonment, it permits damages for confinement imposed pursuant to the legal process." *Id.* We therefore conclude that the Plaintiff's false arrest claim is not barred under the *Heck* ruling.

Defendants further argue, however, that Plaintiff has failed to allege any compensable injury flowing from his purportedly unlawful arrest other than his conviction and sentence. Again, we disagree. To recover compensatory damages under Section 1983, a plaintiff must prove that his arrest was false and that it caused him actual, compensable injury. *Memphis Comm. School Dist. v. Stachura*, 477 U.S. 299, 308, 106 S.Ct. 2537, 2543, 91 L.Ed.2d 249 (1986). According to his complaint, Plaintiff "has experienced humiliation, emotional distress, physical injury, pain and suffering." Compl. at ¶55. At this stage of the litigation, we find that Plaintiff has set forth actual, compensable damages that he could theoretically document as this matter moves forward. As such, we deny Defendants' motion to dismiss Plaintiff's false arrest claim.

### 2. First Amendment

Defendants contend that Plaintiff's complaint fails to set forth a claim alleging violations of the Plaintiff's First Amendment right to freedom of expression or right to peacefully assemble. We agree. Plaintiff's complaint first states, without further explanation, that Defendants violated his First Amendment right to freedom of expression. *See* Pl. Compl. at ¶61. We characterize this statement as an allegation that Defendants retaliated against Plaintiff for exercising his First Amendment right to speak freely. To state a claim for retaliation, Plaintiff must establish that: (1) his speech was constitutionally protected; and (2) Defendants' actions were motivated by his constitutionally protected speech. *See Vukadinovich v. Bd. of School Trustees of North Newton School Corp.*, 278 F.3d 693, 699 (7th Cir. 2002). For Plaintiff's speech to have been constitutionally protected, it must have "touch[ed] upon a matter of public concern." *Connick v. Meyers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983). In determining whether the speech in question addressed a matter of public concern, we look at the context, content, and form of the statements. *See id.* 461 U.S. at 146-48, 103 S.Ct. at 1689-91.

Although Plaintiff does not identify the speech for which he was retaliated, his complaint details a number of instances in which he spoke. On or about February 5, 2001, Plaintiff attended a local "C.A.P.S." meeting at Truman College at which he spoke about the issue of discriminate and illegal searches being conducted by tactical and other plain clothes officers in the area. Plaintiff's speech at Truman College certainly touched upon a matter of public concern. Plaintiff's complaint, even when liberally interpreted, does not contend that Defendants' actions were motivated by his speech.

Plaintiff's complaint sets forth a second occasion on which he spoke before his arrest. On or about February 14, 2001, Plaintiff was at the pub across the street from Truman College when Officers Porter, Haro, and at least three other plain clothes officers entered and began searching some of the patrons. Officer Porter walked past Plaintiff and made a comment to a female friend of Plaintiff, Maria Cruz. Although Plaintiff did not hear that statement, Cruz told him that Officer Porter had made a pass at her. Plaintiff laughed in disgust and watched the officers while they searched and harassed some of the minority patrons of the pub. Officer Porter noticed Plaintiff laughing and asked him what he though was so funny. Officer Porter asked Plaintiff to produce an identification card, which he did. Officer Porter examined and then returned the card.

Plaintiff suggests that Defendants' actions, particularly those of Officer Porter, were motivated by Plaintiff's act of laughing in disgust at Officer Porter at the Nickel. According to the complaint, Officer Porter made repeated references to Plaintiff's February 14, 2001 act of laughing at him during the course of his search and arrest of Plaintiff on February 22, 2001. While Plaintiff's act of laughing in disgust at Officer Porter was arguably speech, we do not find that it touched upon a matter of public concern. Instead, Plaintiff privately and directly communicated his laughter to Cruz – laughter which was overheard by, not directly addressed to, Officer Porter. Moreover, Plaintiff's laughter pertained to

Officer Porter's behavior toward Cruz specifically rather than the CPD's behavior generally. We therefore find that Plaintiff's complaint fails to state a First Amendment retaliation claim.

The complaint secondly states, without further explanation, that Defendants' actions violated his right to peacefully assemble. The First Amendment guarantees the right of the people to peacefully assemble. *See Hague v. Committee for Industrial Org.*, 307 U.S. 496, 513, 59 S.Ct. 954, 963, 83 L.Ed. 1423 (1939). As the Supreme Court has explained, "[t]he very idea of a government, republican in form, implies a right on the part of its citizens to meet peaceably for consultation in respect to public affairs and to petition for a redress of grievances." *United States v. Cruikshank*, 92 U.S. 542, 552, 23 L.Ed. 588 (1875). Plaintiff's complaint, however, does not suggest that Defendants' actions interfered with Plaintiff's right to peacefully assemble. Instead, Plaintiff's complaint establishes that at the time of the Defendant Officers' entrance into Robinson's apartment on February 20, 2001, Plaintiff was there socializing with Robinson and the Cruz sisters.² Plaintiff's complaint does not allege that Defendants violated his right to peacefully assemble on any other date.³ As such, we find that Plaintiff's complaint fails to state a claim for violation of his right to peacefully assemble. Consequently, we dismiss Plaintiff's First Amendment claims.

3. *Fifth Amendment*

Plaintiff brings claims against Defendants based on the Fifth Amendment. However, the Fifth Amendment guarantees due process rights only against intrusion by federal officials. *See Bolling v.*

---

²If anything, Plaintiff's social activity at the time of the Officers' entrance to Robinson's apartment implicates Plaintiff's First Amendment Right of Freedom of Association. However, the Supreme Court "do[es] not think the Constitution recognizes a generalized right to 'social association.'" *City of Dallas v. Stanglin*, 490 U.S. 19, 25, 109 S.Ct. 1591, 1595, 104 L.Ed.2d (1989).

³To the contrary, Plaintiff's complaint avers that he was and continues to be active in community organizations, including the Campaign to End the Death Penalty. Furthermore, Plaintiff attended the CAPS meeting on or about February 5, 2001 at which he spoke of CPD tactics.

11

*Sharpe*, 347 U.S. 497, 500 (1954). When due process violations purportedly occurred at the hands of state officials, relief is appropriately sought under the Fourteenth Amendment, as the Plaintiff has done in this case. Accordingly, we dismiss Plaintiff's Fifth Amendment claim.

    4.    *Eighth Amendment*

Plaintiff alleges that Officer Porter's use of excessive force violated his constitutional rights under the Eighth Amendment. *See* Pl. Compl. at ¶66. The Eighth Amendment's prohibition on cruel and unusual punishment applies only to individuals who have been convicted. *See Collignon v. Milwaukee County*, 163 F.3d 982, 987 (7th Cir. 1998). The abuse Plaintiff contends he suffered occurred when he was an arrestee. Consequently, the Fourth Amendment's reasonableness standard controls Plaintiff's claim. *See Michigan v. Summers*, 452 U.S. 692, 800 (1981). We therefore dismiss Plaintiff's Eighth Amendment claim.

    5.    *Fourteenth Amendment*

Defendants argue that Plaintiff's complaint fails to state a claim for violation of the Due Process Clause. We disagree. Defendants' argument stems from its interpretation of the Due Process Clause, in the context of a Section 1983 claim, as only protecting an individual's right to a fair trial. However, in *Whitley v. Seibel*, 613 F.2d 682 (7th Cir. 1980), the Seventh Circuit analyzed a plaintiff's Section 1983 false arrest claim under the lens of due process. *See id.* at 684. According to the *Whitely* court, a police officer that obtained authority to arrest the plaintiff by deliberately misrepresenting facts violated the plaintiff's right not to be seized without the due process of law. *See id.* at 686. The case does not address whether such conduct violated the plaintiff's due process right to a fair trial. In light of *Whitley*, we deny Defendants' motion to dismiss Plaintiff's claim under the Due Process Clause.

Defendants also argue that Plaintiff's complaint fails to state a claim for violation of the Equal Protection Clause. We agree. To state a claim for a violation of the Equal Protection Clause, a plaintiff

12

must state: (1) that he is a member of a protected class; (2) that he is otherwise similarly situated to members of the unprotected class; and (3) that he was treated differently from members of the unprotected class. *See Sims v. Mulcahy*, 902 F.2d 524, 538 (7th Cir. 1990). The plaintiff must also aver that the defendants' actions were motivated by a discriminatory purpose and had a discriminatory effect. *Pers. Adm'r of Mass. v. Feeny*, 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979).

Here, Plaintiff fails to state whether he is a member of a protected class. Plaintiff explains that the City, through the CPD, has targeted minorities and persons on mandatory supervised release. Plaintiff's complaint does not disclose his racial identity, but does reveal that at the time of his arrest, he was on mandatory supervised release. Persons on mandatory supervised release, however, do not constitute a protected class.[4] Furthermore, Plaintiff has failed to allege that Defendants acted with a discriminatory purpose. Indeed, he states that Defendants took action against minorities and persons on mandatory supervised release in order to reduce crime. *See* Compl. at ¶12. Consequently, we dismiss Plaintiff's Equal Protection claim.

## III. CONCLUSION

For the foregoing reasons, we grant Defendants' motion to dismiss the claims against Superintendent Hillard and the Officers in their official capacities, but deny their motion to dismiss the claims against Superintendent Hillard in his individual capacity. We deny Defendants' motion to dismiss

---

[4]The complaint does, however, describe other persons who were searched and seized by the CPD in the Uptown as "minorities." Compl. at ¶11. Even if Plaintiff had identified his own racial identity, and that identity made him part of a protected class, he would still fail to demonstrate that he was treated differently than members of an unprotected class – individuals on mandatory supervised release.

Plaintiff's false arrest and Due Process claims. We grant Defendants' motion to dismiss Plaintiff's First, Fifth, Eighth, and Equal Protection claims. It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated 7/17/03